**LEWIS R. SILVERMAN**
**SILVERMAN & ASSOCIATES**
**445 HAMILTON AVENUE, SUITE 1102**
**WHITE PLAINS, NEW YORK 10601**
**TEL: 914-574-4510**
**FAX: 914-574-4515**
**EMAIL: LSILVERMAN@SILVERMANANDASSOCIATESNY.COM**
**ATTORNEYS FOR PLAINTIFF**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UCARS HOLDINGS, LLC <br><br> Plaintiff, <br><br> v. <br><br> FAST TRACK MOBILITY, LLC, <br> and FAST TRACK LEASING, LLC, d/b/a <br> FAST TRACK MOBILITY <br> Defendants | **CIVIL ACTION NO.** : 25 CV 3999 <br><br><br> **COMPLAINT** <br><br><br> **JURY TRIAL DEMANDED** |

### COMPLAINT AND JURY DEMAND

Plaintiff, UCARS HOLDINGS, LLC ("HOLDINGS"), for its complaint against Defendant, FAST TRACK MOBILITY, LLC and FAST TRACK LEASING, LLC, d/b/a FAST TRACK MOBILITY (cumulatively, "FAST TRACK"), states:

### Nature of the Case

1.    This is a civil action for breach of contract between diverse parties.

2.    By this action, Plaintiff HOLDINGS seeks equitable and legal remedies for Defendant FAST TRACK'S failure to make payment under a contract between the parties dated August 26, 2022.

**Parties**

3.     Plaintiff HOLDINGS is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business at 2301 N Central Expy Suite 138, Plano, Texas 75075. The Manager and sole member of Plaintiff UCars Holdings, LLC is Joel Goldberg, whose principal place of business was also in Plano, Texas at the time of the transaction that is the subject of this dispute.  Joel Goldberg has subsequently moved to 101 Ocean Dr #906, Miami Beach, Florida 33139, with Florida as his residence and principal place of business.

4.     Thus, at all relevant times, Plaintiff HOLDINGS and its sole owner/manager (Joel Goldberg), were citizens of Texas and/or Florida, with HOLDINGS being a Delaware limited liability company.  Plaintiff HOLDINGS and its Manager and sole owner, Joel Goldberg, never operated any business in New York and were never citizens of New York.

5.     Defendant FAST TRACK LEASING, LLC is a New York limited liability company, whose business, assets and control center are at its principal place of business at 445 Empire Boulevard, Brooklyn, NY 11225, which filed an Assumed Name Certificate on October 19, 2018 doing business as FAST TRACK MOBILITY.

6.     Defendant FAST TRACK LEASING, LLC, d/b/a FAST TRACK MOBILITY may be served by serving the New York Secretary of State as Agent which shall mail a copy of any process against the corporation by personal delivery to: Voyager18 Global Mobility Acquisition, LLC, 445 Empire Boulevard, Brooklyn, NY 11225.

7.     Defendant FAST TRACK MOBILITY, LLC is a New York limited liability company. According to various of its websites, it operates as "Fast Track Mobility, LLC (formerly Fast Track Leasing, LLC)," though the history of its corporate filings do not

2

demonstrate a formal merger or sale, yet upon information and belief it operates as a de facto merger. FAST TRACK MOBILITY, LLC is owned by Voyager 18 Global Mobility Acquisition, LLC, also headquartered at 445 Empire Boulevard, Brooklyn, NY, 11225, as a New York limited liability company.

8.     Defendant FAST TRACK MOBILITY, LLC  may be served by serving the New York Secretary of State as Agent which shall mail a copy of any process against the corporation by personal delivery to: Corporation Service Company, 80 State Street, Albany, NY 12207.

9.     Therefore, upon information and belief the FAST TRACK Defendants and their ownership are citizens of New York.

### Jurisdiction and Venue

10.     Subject matter jurisdiction over this action is conferred upon this Court by 28 U.S.C. §§ 1332 insofar as the matter in controversy exceeds the sum of $75,000, and that the Parties and the members of each of the respective parties are citizens of different states.

11.     Personal jurisdiction is proper over the FAST TRACK Defendants because they are domiciled in New York, headquartered in New York, do business from their control center in New York, and Section 9.8 of the underlying Purchase Agreement that is the focus of this lawsuit provided that the parties consented to "the sole and exclusive jurisdiction of the Courts of the State of New York located in New York, New York and of the federal courts of the United States of America located in New York in the State of New York (the "Chosen Courts").

12.     For the same reasons, Venue is also proper in the Chosen Courts as defined above.

13.     Although Defendants have not provided information explaining the distinctions between FAST TRACK LEASING, LLC and FAST TRACK MOBILITY,LLC, the Defendants'

website, social media and other platforms suggest a de facto merger. Moreover, Section 9.4 of the Purchase Agreement allowed an internal transition of assets so long as the Purchaser remained obligated for the obligations under the Purchase Agreement.  Based on the de facto merger, upon information and belief FAST TRACK LEASING, LLC and FAST TRACK MOBILITY, LLC are indistinguishable in reality and both are responsible for the obligations under the Purchase Agreement.

### Factual Background

**A.  SECURITIES PURCHASE AGREEMENT (hereinafter the "SPA")**

1.      On or about August 26, 2022 FAST TRACK LEASING, LLC purchased 100% of HOLDINGS'[1] equity ownership of UCars Management, LLC (defined in the SPA as the "Company") for a Purchase Price defined as $16,025,047.  The SPA contained normal opportunities for adjustments, all of which were completed long ago and are not relevant to the current dispute between the Parties.

2.      However, the SPA also included a Holdback Amount defined as $5,275,047 (the "Holdback") which was deducted from the Purchase Price, and the Holdback was not paid at Closing.  Instead, as is typical of this type of acquisition, the Holdback was pursuant to Section 8.9 "Release of Holdback" to be paid in 24 monthly installments, which calculates to monthly release (payment) to Holdback equal to $219,793.62.

3.      For the first 14 months after Closing the required monthly release (i.e. payment) of the Holdback in the amount of $219,793.62 occurred fairly consistently.  Most payments were sent late, but no Default was ever declared and the parties generally worked harmoniously.

---

[1] A minute interest in the Company was held separately by Joel Goldberg which interest was also conveyed to FAST TRACK LEASING, LLC as the Purchaser at Closing. Goldberg's interest in the Holdback payments that are the subject of this lawsuit were subsequently conveyed to HOLDINGS, meaning that any and all compensation to which the Sellers are entitled under the SPA are held in the name of HOLDINGS.

4

However, the November, 2023 payment was seriously delayed and informal notices were made, repeatedly, to secure payment. The FAST TRACK Defendants proposed a reduced and extended payout of the Holdback, but such discussions were not ultimately successful, in large measure because full and transparent information was never provided.

4.      The December, 2023 payment was not made, nor have any payments been made after December, 2023. This calculates to a deficiency of 9 Holdback payments which were not made of $219,793.62 each, for a total of $1,978,142.58.  Therefore, as of the date of filing this lawsuit, the FAST TRACK Defendants are in default and owe Plaintiff $1,978,142.58 in unpaid Holdback payments otherwise due under the SPA.

5.      Upon information and belief, the FAST TRACK Defendants do not dispute the balance of the Holdback in the amount of $1,978,142.58 due to Seller.  Instead, the FAST TRACK Defendants have delayed and delayed payment of the Holdback payments based on reliance on Section 8.9(b) of the SPA which includes a "Payment Blockage" provision. This contemplated, as was explained at the time and is consistent with  Section 8.9(b), that if the financial results of the FAST TRACK Defendants and their affiliates created a default with their secured lender, or if the payment of the monthly Holdback payment to HOLDINGS would place the FAST TRACK Defendants into a Default with their secured lender, then in such circumstances FAST TRACK the secured lender could effectuate a Payment Blockage, thereby delaying payment to HOLDINGS.  The specific operative language from Section 8.9(b) upon which FAST TRACK relies is as follows:

> *Notwithstanding anything to the contrary contained in this Agreement, Purchaser shall not pay or release any portion of the Holdback Amount or make any distribution in respect of any such amount, and Sellers shall not accept or retain any such payment or distribution, to the extent that any such payment or delivery of such release would be prohibited or blocked by the Financing  Documents or would otherwise result in the occurrence of a default or an Event of Default or a*

*failure of Purchaser or any of its Affiliates to be in pro forma compliance with the financial covenants under the Financing Documents (a "Payment Blockage");….*

6.      The "Financing Documents" were not disclosed to HOLDINGS prior to or in connection with the Closing, nor have such documents ever been shared with HOLDINGS.  Such documents were explained as the normal requirements of an arms-length third party secured creditor who often insists upon Payment Blockage rights against inferior creditors so that in the event of a borrower (in this case FAST TRACK's) failure to meet financial covenants, the secured lender can temporarily block payments to inferior creditors without having to protect the their collateral through declaring their own default and foreclosing out the equity interests of their borrower.

7.      Although the "Financing Documents" were not disclosed, they were defined in the SPA as:

> *"Financing Documents" means Purchaser's and its Affiliates' (including the Company's) third-party financing documents and any subsequent refinancing thereof.[2]*

8.      In lieu of a complete absence of the disclosure of the Financing Documents, HOLDINGS relied on industry standard understandings of how a Payment Blockage worked, based on objective criteria that applied across the board, not targeted to one particular creditor – in this case HOLDINGS.  Moreover, the parties defined "Financing Documents" to mean "third-party financing documents", not affiliated, incestuous relationships with equity participating lenders who could orchestrate the non-payment targeted specifically against HOLDINGS.  Upon information and belief, the Financing Documents upon which FAST TRACK relies in refusing to pay the balance of the Holdback are not arms-length, third parties as defined and as contemplated

---

[2] Definition section of the SPA.

by the SPA. Instead, the lenders and equity holders have complicated waterfalls which very much create anything but an arms-length secured creditor.

9.      To be assured of transparency and to avoid any misuse of this provision, the SPA also included language requiring full disclosure with the provision:

> *In the event of a Payment Blockage or a suspension of Purchaser's obligation, Purchaser shall immediately deliver written notice to Sellers describing the circumstances giving rise to such Payment Blockage or suspension, which notice shall include supporting documentation.[3]*

10.      Based on the SPA, under no circumstances did the Holdback obligations cease to be the obligations of the FAST TRACK defendants, and, in fact, Section 8.9 also had provisions requiring cure and payment when the Payment Blockage ceased to exist..

> *Purchaser's obligation to pay or release the applicable portion of the Holdback Amount shall be reinstated, in arrears, once the default or Event of Default resulting in such Payment Blockage has been cured or waived in writing by the requisite holders of the debt under the Financing Documents;[4]*

11.      Despite the contractual requirement for transparency as to the basis for any Payment Blockage, FAST TRACK delayed over 60 days in even attempting to explain the basis for the Payment Blockage, not sending any explanation until mid February, 2024. FAST TRACK has refused to provide and has not provided copies of the underlying Financing Documents, nor to even identify the third party lender whose Financing Documents justify the Payment Blockage, nor to provide copies of the financial results. To constitute a Payment Blockage as contemplated, FAST TRACK would need to suffer serious financial failure to achieve the covenants contained in such Third Party Financing Documents. No such information

---

[3] Section 8.9(b) of the SPA.
[4] Section 8.9(b) of the SPA.

has been provided, and efforts to receive such information have been thoroughly rejected by FAST TRACK..

12.     HOLDINGS is without information as to the identity of the third party lenders, the content of the Financing Documents, the covenants contained in such Financing Documents that may or may not justify a Payment Blockage, to ascertain whether the Payment Blockage is neutral, across the board or targeted only against HOLDINGS which appears to be the case but is not known with certainty. Further, HOLDINGS is without disclosures by FAST TRACK as to FAST TRACK'S financial results which might suggest a default or near default situation or a failure to achieve the financial covenants set forth in the Financing Documents.

### FASTTRACK'S PURPORTED EXPANSIONAND SUCCESS

13.     Contrary to FAST TRACK's purported financial failures, inability to meet loan covenants, being placed on a Payment Blockage by its Lenders (upon information and belief, insiders and not legitimate third party lenders), FAST TRACK's websites, along with its affiliates who operate as a conglomerate, are marketing to the world, including prospective customers and investors that FAST TRACK is extremely successful and expanding rapidly across multiple venues as a quickly rising conglomerate.

14.     More specifically, FAST START and its corporate conglomerate market that:

**2023  – Acquisition of Prostarte**
a.  Voyager Global Mobility or Fast Track Leasing acquired Prostrate for unknown amount
b.  "VGM's most recent acquisition in its global expansion is PreStarte, the largest rideshare vehicle provider in Costa Rica. With a green vision in mind and the assistance of VGM's capital and expertise, PreStarte is on course to be the largest EV and LP fleet of rideshare vehicles in Latin America." Sami Ketchum (Senior Marketing Director, VGM)
c.  PreStarte, founded in October 2016, is the largest rideshare vehicle provider in Costa Rica. The company began with 40 vehicles and expanded to 90 shortly after, establishing partnerships with major platforms like Uber. By 2023, PreStarte had grown its fleet to over 200 vehicles, offering leasing options with a focus on electric and liquefied petroleum gas (LP) vehicles to promote environmental sustainability

8

d.   **Source**: https://prestarte.cr/about/

15.   According to the Voyager/Fast track website (voyagergm.com/growth/), under its section entitled "Acquisitions & Growth", FAST TRACK and its corporate parent, Voyager Global Mobility:

*Voyager Global Mobility (VGM) is one of the fastest-growing mobility operators in America, providing professionally managed vehicles to drivers and mobility network companies. (https://www.voyagergm.com/growth/ )*

16.   Further, VOYAGER touts its acquisition of FAST TRACK, claiming that in 2022 it acquired 5 new locations and 500 new vehicles, with an additional 5 new locations in 2023, and in 2024 it touts 11,000 vehicles in 14 cities, 2 countries and 7 subsidiary businesses.  It claims to anticipate "25K Vehicles by YE26", and that it is "well positioned to take advantage of the enormous global ridesharing market." https://www.voyagergm.com/growth/

17.   Upon information and belief and based on a review of the recent UCC filings by various lenders, presumably none of whom have the Payment Blockage language in their Financing Documents, as recent as early 2025, numerous lenders appear to be making new loans and financing the growth of FAST TRACK's fleet of vehicles.

18.   Further, FAST TRACK and its affiliates and related parties appear to be expanding with sufficient capital to continue pursuing acquisitions, expansion and affiliated relationships.  According to an affiliated website:[5]

*DriveItAway Holdings, Inc. ( OTC Marketplace: DWAY) ("DriveItAway" and "Company"), an automotive industry leader in new digital mobility platforms with its unique "micro-lease/subscription to purchase" technology, continues to gain traction and visibility in its mission to*

---

[5] (https://www.globenewswire.com/news-release/2025/02/13/3025900/0/en/DriveItAway-Holdings-Inc-Secures-a-Credit-Line-Guaranty-of-4-Million-Dollars-from-Industry-Leader-Menachem-Light-Who-Will-Chair-the-Board-of-Advisors.html

*enable all to drive, and then buy, affordable quality personal transportation, announces today the closing of a four million dollar credit line funding guaranty from Menachem Light, a noted national leader in the vehicle rental industry. He has also agreed to serve on the Company's Board of Advisors as Chairman.*

*Menachem Light, is the Co-Founder of Voyager Global Mobility (VGM), a growing mobility supply company that provides professionally managed vehicles in North America to driver and software company partners on the trillion-dollar asset side of the smart mobility industry: ride-hailing, on-demand travel, and car sharing. Through its internally operated companies and its wholly owned subsidiaries Buggy TLC (United States), FastTrack Leasing TLC (United States) and Mi Nave (Mexico), and partners closely with Uber, Lyft, Via, Didi, Turo and Getaround as it efficiently grows its market share in this hyper-fragmented supply industry.*

*DriveItAway will use the credit guaranty to increase its own company-owned fleet, operating on its unique app-based digital platform that easily and transparently provides vehicle subscriptions, long-term rentals and flexible leases to individuals, and now small businesses, regardless of credit score, credit history or cash down payment.*

19. Based on the marketing and public persona disseminated by FAST TRACK, its conglomerate affiliates and the officers of those entities, FAST TRACK is extremely successful, growing and financially viable. FAST TRACK management anticipates doubling their size in 2026. There is no public disclosure of hard financial times, the inability to meet loan covenants, or loan defaults or near defaults. Upon information and belief, such alleged loan defaults are fabricated efforts, simply trying to orchestrate a Payment Blockage through self-dealing, related and affiliated parties, to utilize $1,978,142.58 in financial resources – interest free. Despite multiple requests for documents to which HOLDINGS is entitled under the SPA, FAST TRACK has wholly failed to provide transparency which would justify any Payment Blockage whatsoever.

20.    Such conduct is not in good faith and fair dealing, not consistent with the language of the SPA, and in breach of FAST TRACK's obligations set forth therein.

## Count I – Breach of Contract

21.    HOLDINGS realleges and incorporates by reference the averments of all preceding paragraphs as if set forth fully in this paragraph.

22.    The Purchase Agreement is a valid contract among and between HOLDINGS and FAST TRACK.

23.    HOLDINGS fully performed its obligations and FAST TRACK has not made any claims to the contrary.

24.    Instead, FAST TRACK has failed and continues to fail to honor its obligations under the SPA to:

(a) Immediately disclose the circumstances giving rise to the Payment Blockage and to provide supporting documentation;

(b) To resume payments which were delayed by the alleged Payment Blockage, which outstanding indebtedness equals 9 Holdback payments totalling $1,978,142.58 currently due and owing to HOLDINGS, plus prejudgment interest at the statutory rate.

## Prayer for Relief

Based on the foregoing, HOLDINGS requests that this Court enter judgment in its favor against FAST TRACK on each and every claim for relief set forth above and award HOLDINGS relief, including without limitation, the following:

1.     Compensatory damages in the amount of $1,978,142.58;

2.     Pre and post judgment interest;

3.     Court costs and fees; and

4.     Such other legal or equitable relief as this Court may deem just and proper.

## Jury Demand

HOLDINGS demands a trial by jury on all issues so triable, recognizing that the SPA contains a Waiver of Jury Trial to the extent permitted by law that may serve to limit HOLDINGS' right to a Jury.

Dated: July 18, 2025

Respectfully Submitted:

**SILVERMAN & ASSOCIATES**

Lewis R. Silverman
OF COUNSEL:

PAGEL, DAVIS & HILL, P.C.
/s/ Martyn B. Hill
Martyn B. Hill
State Bar No. 09647460
Fed. ID No. 13806
eservice@pdhlaw.com
Michael A. Harris
State Bar No. 24046030
mah@pdlaw.com
1415 Louisiana Street, 22nd Floor
Houston, Texas 77002
Phone: 713-951-0160
Fax: 713-951-0662

*Attorneys for Plaintiff*

12